IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **HOPE W.,**[1] ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **Civil Action No. 7:17-cv-336** |
| ) | |
| **NANCY A. BERRYHILL,** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

## REPORT AND RECOMMENDATION

Plaintiff Hope W. ("Hope") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for supplemental security income ("SSI") and disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381–1383f.  Hope alleges that the Administrative Law Judge ("ALJ") erred because: (1) substantial evidence does not support the ALJ's determination that Hope did not meet or equal the criteria of listing 13.10E; and (2) substantial evidence does not support the ALJ's RFC finding.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Hope's Motion for Summary Judgment (Dkt. 17) and **RECOMMEND GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 21).

## STANDARD OF REVIEW

This Court limits its review to a determination of whether substantial evidence exists to

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

1

support the Commissioner's conclusion that Hope failed to demonstrate that she was disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Hope filed for SSI and DIB on July 23, 2013, claiming her disability due to stage 3 breast cancer began on July 21, 2013. R. 83, 93. Hope was 35 years old when she applied for benefits and on her alleged onset date. Id. Hope's date last insured was June 30, 2015; thus, she must show that her disability began on or before this date and existed for twelve continuous months to receive DIB. R. 83; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Hope's applications at the initial and reconsideration levels of administrative review. R. 83–124. On November 10, 2015, ALJ Steven A. De Monbreum held a hearing to consider Hope's claims for SSI and DIB. R. 29–78. Counsel represented Hope at the hearing, which included testimony from vocational expert Barry Hensley. R. 29. On June 29, 2016, the ALJ entered his decision analyzing Hope's claims under the familiar five-step process[3]

---

[2] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[3] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520);

2

and denying her claim for benefits. R. 11–23.

The ALJ found that Hope had not engaged in substantial gainful activity since July 21, 2013, the alleged onset date. R. 13. The ALJ determined that Hope suffered from the severe impairments of history of breast cancer with bilateral mastectomy and surgical reconstruction, obesity, and lymphedema. R. 14–15. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment, including listing 13.10 (malignant neoplasm of the breasts with secondary lymphedema caused by anti-cancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity). R. 15. Hope's attorney argued that the ALJ should consider listing 13.10E, but the ALJ determined that the record evidence did not support a finding that her condition met the listing. Id. The ALJ also considered the cumulative effects of obesity at each step of the evaluation process in conjunction with Hope's other impairments, but determined that her obesity had not reached a level that would cause other impairments to meet or medically equal a listed impairment. Id.

The ALJ concluded that Hope retained the residual functional capacity ("RFC") to perform light work, with exceptions. Id. Specifically, the ALJ found that Hope can: lift and carry, including by upward pulling, up to twenty pounds occasionally and ten pounds frequently; stand or walk and sit, with normal breaks, each for six hours in an eight-hour workday; occasionally reach overhead with the bilateral upper extremities; never crawl or climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, kneel, crouch, and stoop or bend; and

---

Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

frequently balance. Id. She should have no exposure whatsoever to hazards, such as dangerous moving machinery and unprotected heights. Id. The ALJ determined that Hope is able to perform her past relevant work as a companion, as some of that work does not require the performance of work-related activities precluded by the RFC. R. 21. The ALJ alternatively found that Hope could also perform jobs that exist in significant numbers in the national economy, such as retail sales work, usher, order clerk, and material handler/packer/sealer. R. 22. Thus, the ALJ concluded that Hope was not disabled. Id. Hope appealed the ALJ's decision and the Appeals Council denied her request for review on May 12, 2017. R. 1–5.

## ANALYSIS

Hope alleges that the ALJ erred because: (1) substantial evidence does not support his determination that Hope did not meet or equal the criteria of listing 13.10E; and (2) substantial evidence does not support his RFC finding.

### A. Medical History

1. Physical Impairments

Hope claimed her disability due to stage 3 breast cancer began on July 21, 2013, when she was 35 years old. R. 83, 93. In June 2013, Hope went to the emergency room for pain in her left breast, and in July 2013, she was diagnosed with breast cancer. R. 331–34, 346–48. In September 2013, Hope underwent a bilateral mastectomy and lymph node biopsy, followed immediately by a bilateral breast reconstruction. R. 349–54. Hope's doctors were happy with her recovery immediately after the surgery and reported only minor issues for which her doctors prescribed medication. R. 407, 410, 413, 416, 419. In late October 2013, Hope was admitted to the hospital for an infection in her right breast, but the complication completely resolved within two days. R. 468, 655. Hope began chemotherapy in November 2013, after which she had some

typical side effects. R. 500–11, 583–84.

In January 2014, Hope underwent an additional surgery because of an exposed right breast tissue expander. R. 422, 428, 542, 545–46, 598–99. Hope healed well after that surgery. R. 432, 435, 666. During that time, Hope's chemotherapy treatment was placed on hold, but resumed after the surgical issue was resolved. R. 575–82. Following her course of chemotherapy, which she completed in March 2014, Hope reported feeling well, her fatigue had improved, and her doctor likewise noted that she was recovering well. R. 572–74. She then began hormone therapy, which she tolerated well. R. 709, 715, 721, 727. In June 2014, Hope had surgery for revision of her right breast reconstruction after removal of the right tissue expander, from which she recovered well. R. 438, 441, 640, 643–45. After this surgery, Hope began attending physical therapy for her upper extremity lymphedema, trunk edema, and pain and mobility issues in June 2014. R. 741. Therapists reported her as compliant. R. 744, 747, 750, 752, 755, 757. There were multiple notes of Hope making good progress (R. 750, 752, 755), experiencing less pain (R. 749, 757), and increasing her mobility (R. 755, 757). Hope ceased going to therapy in September 2014 because she had issues with her insurance, and thereafter failed to undergo a re-evaluation necessary to solve the insurance issue. R. 757–58.

Following Hope's June 2014 surgery, she continued to receive fills for her breast expanders, during which her doctors noted she was doing well overall and her pain was reasonably controlled. R. 669–670. In September 2014, Hope fell and went to the emergency room for pain in her left breast. R. 674. She developed a seroma in her left breast, causing asymmetry. Id. Hope then had surgery in November 2014 to exchange silicone implants for her breast tissue expanders. R. 648–53. She had "excellent" results from that surgery and her treating plastic surgeon determined that Hope had no restrictions after she recovered. R. 676–77.

5

Hope continued to tolerate her hormone therapy throughout 2015. R. 712, 718, 724. She had some complaints of musculoskeletal pain, but her doctor did not believe hormone therapy was the cause and recommended over-the-counter pain relievers. R. 712, 718. Hope began attending occupational therapy again in November 2015. R. 705, 758–62. There is only one therapy session from 2015 in the record, but the initial treatment notes indicate that Hope was compliant with therapy and displaying good progress. R. 764.

Hope testified at the administrative hearing that she is unable to move or lift her arms at times due to the double mastectomy and subsequent surgeries. R. 37. She testified to being severely nauseated and fatigued throughout all of the surgeries. Id. She said that she was in severe pain constantly, including at the hearing, due to fluid build-up in her arms, chest, and back. R. 37–38. Hope explained not being able to hold even a cup because the pain radiates all the way down to her hands, and cannot lift a gallon of milk or a two-liter soda bottle. R. 42, 49. Hope also testified to difficulties with sitting and standing for long periods of time, beyond forty-five to sixty minutes, because of the pain. R. 49–50. In terms of daily activities, Hope testified that she cannot sweep, mop, or wash dishes because of her arm pain, and can only cook frozen meals. R. 54. Hope said that she takes care of the two children in her home, but requires help from her sister and niece. R. 57. Hope's attorney asked her about the voluminous medical records that report her feeling fine. In response, Hope testified that she consistently described her fatigue, nausea, and pain to her oncologist, but he always responded that he cannot do anything about those issues and they are not his problem. R. 42. Finally, Hope testified that she tried to go back to her cleaning position, but was unable to because her employer did not have any light work that she could do. R. 37.

2. <u>Medical Opinion Evidence</u>

In December 2013, as part of the state agency's initial disability determination, Richard Surrusco, M.D., reviewed the record and found that Hope could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk and sit, with normal breaks, each for six hours in an eight-hour day; and push or pull without limitation, except she is limited to occasionally reaching overhead. R. 88–90, 98–100. Her postural limitations included occasionally climbing ramps, stairs, ladders, ropes, or scaffolds; occasionally stooping, kneeling, crouching, and crawling; and frequently balancing. R. 89, 99. Dr. Surrusco determined that Hope had no visual, communicative, or environmental limitations. R. 90, 100. He based these findings on Hope's bilateral mastectomy due to breast cancer. R. 89, 99. Dr. Surrusco ultimately concluded that Hope could perform light work. R. 91, 101.

In April 2014, Gene Godwin, M.D., evaluated Hope's record for her reconsideration application. Dr. Godwin's findings were identical to Dr. Surrusco's. R. 111–12, 121–22. The only difference in Dr. Godwin's RFC determination was that he specified her occasional overhead reaching limitation applied to bilateral overhead reaching. R. 112, 122. Dr. Godwin likewise found that Hope is capable of performing light work. R. 113, 123.

**B. Listing 13.10E**

Hope first argues that the ALJ erred in finding that her severe impairments did not medically equal listing 13.10E. Specifically, Hope alleges that the ALJ did not fully explain the relevant evidence and did not "show his work" for how he concluded that her impairments did not meet the listing. Pl.'s Br. at 9, Dkt. 18. The Commissioner counters that the ALJ's decision, read as a whole, demonstrates that the ALJ considered the relevant evidence and provided an analysis sufficient to permit judicial review. Def.'s Br. at 11, Dkt. 22.

A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a) (2011). In the Listings of Impairments, "[e]ach impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). A claimant is presumed to be disabled if her impairment meets or is medically equivalent to the criteria of an impairment set forth in the Listings. See 20 C.F.R. § 416.925. "When satisfied, the listings of impairments automatically result in a finding of disability. The listings are designed to reflect impairments that, for the most part, 'are permanent or expected to result in death.'" Casillas v. Astrue, 3:09–CV–00076, 2011 WL 450426, at *4 (W.D. Va. Feb. 3, 2011) (citing 20 C.F.R. § 404.1525(c)(4)).

Under listing 13.10E, Hope is entitled to a conclusive presumption of disability if she can show secondary lymphedema caused by anti-cancer therapy and treated by surgery to salvage or restore the functioning of an upper extremity. 20 C.F.R. § 404, subpt. P, app. 1, sec. 13.10E (effective Aug. 12, 2015 to May 23, 2016). The regulation defines secondary lymphedema as "edema that results from obstruction or destruction of normal lymphatic channels." § 404, subpt. P, app. 1, sec. 13.00. The individual is considered disabled until at least twelve months from the date of the surgery treating the secondary lymphedema. Id. The ALJ is then to evaluate any residual impairment(s) under the criteria for the affected body system. Id.

Hope argues that the ALJ erred by finding that her lymphedema did not meet or equal listing 13.10E, stating that the ALJ "quickly dismissed" the issue and failed to provide an explanation linking evidence to his finding. Pl.'s Br. at 8, Dkt. 18. To the contrary, in response to Hope's request that the ALJ consider listing 13.10E, the ALJ wrote that "the record does not

8

show that surgery has been required for lymphedema [to] salvage or to restore the functioning of an upper extremity." R. 15. While this explanation may seem brief, the ALJ summarily but effectively explained why Hope does not meet the listing: Hope never had a surgery to salvage or restore the functioning of an upper extremity, and never even had a surgery to address her lymphedema. Without that type of surgery, the listing cannot be satisfied, and thus Hope is not entitled to an automatic finding of disability.

The medical records demonstrate that Hope had four surgeries relating to her breast cancer. The first, in September 2013, was the original double mastectomy, bilateral axillary sentinel lymph node biopsy, and bilateral breast reconstruction. R. 349–54. In January 2014, Hope underwent a second surgery to remove an exposed right breast tissue expander, as an open wound revealing the expander was not healing quickly enough due to her chemotherapy. R. 545–46. Hope's third surgery in June 2014 was to revise the right breast reconstruction after removal of the expander. R. 644. Finally, in November 2014, Hope's surgeon removed the bilateral breast tissue expanders and placed permanent silicone gel implants to complete the breast reconstruction. R. 651–52. The three surgeries following Hope's initial double mastectomy did not involve salvaging or restoring functioning to an upper extremity due to lymphedema, but were instead related to the breast reconstruction process.

The ALJ properly found that Hope's condition did not meet or equal the requirements of listing 13.10E. This is not a case in which the ALJ failed to consider a listing. Rather, the ALJ reviewed the evidence in the record, and determined that although Hope's lymphedema, history of breast cancer, and obesity were severe impairments, they individually or combined did not meet listing 13.10E, or any other listing. R. 14–15. Hope alleges that physical therapy notes demonstrate that her condition meets or equals the listing. While they do show that she was

having difficulty with lymphedema, there is no indication that surgical intervention was necessary to salvage or otherwise restore function to her upper extremeties. In fact, her physical therapy records show that her upper extremeties were functional.

Hope does not point to any medical evidence that supports each of the required elements of listing 13.10E. See Sullivan, 493 U.S. at 530 ("For a claimant to show that [her] impairment matches a Listing, [she] must show that it meets all of the specified criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Hope contends that the ALJ should have discussed whether her condition meets listing 13.10E because she needs, but has not undergone, surgeries to correct her lymphedema; consequently, the ALJ has failed to meet his duty of explanation under Monroe. Hope points to no evidence of record that any medical provider has recommended that she undergo surgery to treat her lymphedema to salvage or restore the functioning of her arm, nor does she identify any case law holding that solely needing surgery to remediate lymphedema equals a listing. Therefore, I find that the ALJ adequately explained his consideration of listing 13.10E, and substantial evidence supports his determination that Hope's condition fails to meet it.

### C. RFC Determination

Hope next argues that the physical RFC should have contained more restrictions than those found by the ALJ. As a result, the ALJ erroneously determined that Hope can perform her past relevant work and other work.

SSR 96-8p requires the ALJ to include a narrative discussion describing how the evidence supports his conclusions when developing the RFC. 1996 WL 374184 (SSA) (July 2, 1996). Specifically, the ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusions, discuss the individual's ability to perform sustained work activities

in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, at *7; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ needs to provide an explicit explanation linking medical evidence listed in the decision to his ultimate findings). In Mascio v. Colvin, the court agreed with the Second Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" 780 F.3d 632, 636 (4th Cir. 2015) (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)).

Hope's arguments amount to disagreements with the ALJ's evaluation of her obesity, mobility limitations in her upper extremities, and subjective allegations of pain, and, essentially, she asks the court to impermissibly reweigh the evidence. The ALJ's decision, however, includes the required narrative discussion and allows for meaningful review.

1. Obesity

Hope asserts that the ALJ failed to properly consider her obesity as a severe impairment at steps four and five. Pl.'s Br. at 10, 12, Dkt. 18. SSR 02-1p defines obesity as "a complex, chronic disease characterized by excessive accumulation of body fat." Titles II & Xvi: Evaluation of Obesity, SSR 02-1p, 2002 WL 34686281, at *2, (S.S.A. Sept. 12, 2002). SSR 02-1p also recognizes that obesity can cause limitations in all exertional and postural functions. Specifically:

> An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. [Obesity] may also affect . . . postural functions, such as climbing, balanc[ing], stooping, and crouching. The ability to manipulate may be affected by the presence of adipose

11

> (fatty) tissue in the hands and fingers. The ability to tolerate extreme heat, humidity, or hazards may also be affected.

2002 WL 34686281, at *6. When assessing a claimant's RFC, the ALJ must consider the "effect obesity has upon the [claimant's] ability to perform routine movement and necessary physical activity within the work environment" as the "combined effects of obesity with other impairments may be greater than might be expected without obesity." Id. However, there is no requirement in the regulations that the ALJ include a lengthy or precise analysis in the opinion. Richards v. Astrue, No. 6:11cv00017, 2012 WL 5465499, at *6 (W.D. Va. July 5, 2012) (internal citations omitted).

Furthermore, to challenge an ALJ's obesity analysis, the claimant must advance additional, obesity-related functional limitations not accounted for by the ALJ in his determination of the claimant's RFC. Matthews v. Astrue, No. 4:08CV00015, 2009 WL 497676, at *4 n.4 (W.D. Va. Feb. 27, 2009); see also Phelps v. Astrue, No. 7:09CV0210, 2010 WL 3632730, at *7 (W.D. Va. Sept. 9, 2010). That is, Hope must provide medical evidence establishing functional limitations caused by her obesity that are not addressed in the RFC. Richards, 2012 WL 5465499, at *13; see also Barr v. Astrue, No. 510cv00074, 2011 WL 3420844, at *6 (W.D. Va. Aug. 4, 2011) (finding that the plaintiff's high BMI did not obligate the ALJ to include a more detailed analysis in the RFC determination).

Here, the ALJ found at step two that Hope's obesity was a severe impairment. R. 15. He also stated that he considered the cumulative effects of obesity at each stage of his analysis, specifically citing to SSR 02-1p. Id. The ALJ recognized that obesity may increase the severity of coexisting or related impairments, and explicitly included obesity in his consideration of listing 13.10E. Id. Notably, the ALJ imposed additional limitations (no exposure to hazards, and no crawling or climbing) in order to account for all of Hope's limitations, including her obesity.

12

R. 20. Hope does not propose any additional limitations, much less medical evidence, that would establish functional limitations caused by her obesity and not already addressed by the RFC. Thus, I find that the ALJ properly considered Hope's obesity in compliance with SSR 02-1p in determining her RFC.

### 2. Mobility Limitations in Upper Extremities

Regarding her mobility, Hope argues that the ALJ should have made a more restrictive RFC determination because of the "overwhelming" evidence in the record showing her limitations in her upper extremities. Pl.'s Br. at 10, Dkt. 18. The ALJ also erred in not explaining the mobility limitations that appear in the physical therapy records. Id. at 12. Contrary to Hope's assertions, the ALJ limited Hope to light work with no more than occasional overhead reaching, which expressly takes into account her limited mobility in her upper extremities. In making this determination, the ALJ included the narrative discussion that the regulations require, and this Court is able to review his decision. See Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (quoting Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (finding that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence")).

The ALJ adequately considered Hope's mobility allegations and discussed specific evidence to support his upper extremity reaching limitation. The ALJ discussed both courses of occupational therapy that Hope received in 2014 and 2015. He specifically noted that, in 2014, Hope had been making mobility gains and experienced some pain reduction before she was discharged for failing to follow up after encountering an insurance issue. R. 18. The ALJ also discussed that, upon returning to physical therapy in 2015, Hope again displayed good progress

and would require additional intervention, consistent with her twelve-week therapy plan. R. 19.

The ALJ cited evidence beyond the occupational therapy records that relates to her upper extremity limitations. He noted that Hope's latest physical examinations were unremarkable, and she had adequate musculoskeletal range of motion at her October 2015 general surgery appointment. R. 19–20. Hope's treating plastic surgeon—to whom the ALJ gave great weight—also stated (twice) that Hope had no restrictions, including at the last visit that appears in the record. R. 19. Finally, the ALJ recognized that Hope testified to being very limited in her daily living activities. R. 14. However, he then explained that Hope lives on her own and is able to care for two children, with some occasional assistance from family members. Id. From that, he inferred that Hope "has somewhat greater activities [of daily living], as she does not live with any other adults and must provide care for herself." R. 14. The ALJ concluded that the entire record did not demonstrate any greater limitations than what he accounted for in the RFC. R. 20.

Similarly to her obesity argument, Hope fails to propose any additional limitations involving her upper extremities that she requires. Nevertheless, I find that substantial evidence supports the ALJ's reaching limitation. The ALJ built a logical bridge, based on Hope's occupational therapy records and the additional evidence cited in his opinion, from the record to his reaching limitation. See Monroe, 826 F.3d at 189 (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion").

3. Subjective Complaints of Pain

Hope next argues that the ALJ did not properly consider her subjective allegations of pain in making his RFC determination, as he inappropriately dismissed them and failed to consider the occupational therapy records that contain objective evidence of her pain. Pl.'s Br. at 10, 12, Dkt. 18. The ALJ determines the facts and resolves inconsistencies between a claimant's alleged

impairments and her ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Hope's subjective allegations of disabling symptoms and impairments are not conclusive on their own; rather, subjective complaints and statements of symptoms, like all other evidence of disability, are considered in the context of the record as a whole. See 20 C.F.R. §§ 404.1529, 416.929 (2014). The ALJ must determine the consistency of the claimant's subjective allegations by evaluating the claimant's medical history, medical signs, laboratory findings, objective medical evidence of pain, and "any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it." Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996) (citations omitted). If a claimant's statements are inconsistent with other evidence, the ALJ may find that the claimant's statements are overall outweighed by that other evidence after weighing both accordingly. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016).

 The ALJ found that Hope's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning their intensity, persistence, and limiting effects were not entirely credible. The ALJ pointed to various aspects of her treatment records to support his determination. While Hope underwent multiple surgeries following her original double mastectomy and reconstruction, the ALJ noted that several appeared to be in the "normal course" of reconstruction. R. 19. Her treating plastic surgeon also noted on two separate occasions, including following her final surgery, that Hope had no restrictions. R. 19–20. Similarly, Hope's treating oncologist documented "unremarkable" recent physical exams. R. 20. Hope testified to severe side effects from her hormone therapy, but her treating doctor noted that the "bone achiness" was present before the hormone therapy and did not believe it required prescription narcotics. Id. The ALJ concluded that the "record as a whole

does not document greater limitation than is described in the residual functional capacity." Id.

The ALJ complied with the Craig factors used to determine the consistency of a claimant's allegations by discussing and citing to the relevant evidence in the record. See Taylor v. Astrue, No. 7:10–CV–149–FL, 2011 WL 2669290, at *2 (E.D.N.C. July 7, 2011) ("The ALJ must consider the entire record in making [a credibility] determination. . . . In addition to the objective medical evidence, the ALJ must consider a number of enumerated factors, such as the effect of symptoms on the claimant's daily life activities and the location, duration, frequency, and intensity of plaintiff's pain or other symptoms.") (internal citations omitted). After discussing specific evidence in the record, the ALJ explained that he gave great weight to Hope's treating oncologist because he sees her on a more frequent basis than other sources, and noted that the oncologist's opinions are "notably inconsistent" with Hope's subjective allegations. R. 20. The ALJ appropriately determined which pain allegations were credible, and accounted for those in his RFC determination. Id.

A reviewing court gives great weight to the ALJ's assessment of a claimant's credibility and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984). Substantial evidence supports the ALJ's assessment of the inconsistency in Hope's statements, and that Hope is capable of performing work at the level stated in the ALJ's opinion.

Overall, the ALJ's reasoning in making his RFC determination was specific and permits this Court to meaningfully review his decision. The court is "not left to guess about how the ALJ arrived at his conclusions." Mascio v. Colvin, 780 F.3d 632, 637 (4th Cir. 2015). The ALJ's findings include a detailed summary of Hope's medical records (R. 16–19), the medical opinions (R. 19–20), her hearing testimony (R. 16), and the ALJ's conclusions (R. 19–20). The RFC sets

out Hope's limitations, which are all supported by substantial evidence. Contrary to Hope's assertions, the ALJ built a logical bridge between the evidence and his RFC determination, and there is more than a mere scintilla of evidence available to support it. It is not for this Court to re-weigh the evidence and come to a different conclusion.

    4. <u>Past Relevant Work and Other Work</u>

Regarding past relevant work, Hope argues that, if the ALJ made a more restrictive RFC determination, he would have found that Hope is unable to perform any past relevant work. Pl.'s Br. at 10–11, Dkt. 18. The ALJ determined that Hope has past relevant work as a companion (light or medium exertional level) and as a custodian (medium exertional level). R. 21. In accordance with his RFC determination that Hope is capable of light work, the ALJ noted that she is capable of performing her past relevant work as a companion at the light exertional level. R. 21. Because I determined that substantial evidence supports the ALJ's RFC determination, I cannot say that his finding that Hope could do past work at the light exertional level is erroneous.

At the hearing, Hope testified that she tried to return to work at one of her prior jobs but was unable to because her company did not have any light work available. R. 37. Nevertheless, the ALJ appropriately made alternative findings at step five. He determined that there are other jobs existing in the national economy that she is able to perform at the light exertional level with her limitations, including as an usher, an order clerk, and a material handler/packer/sealer, or work in retail sales. R. 20–21.

Hope objects to the alternative findings because she believes that the hypotheticals proposed to the vocational expert at the hearing were insufficient. Specifically, the ALJ's hypotheticals did not consider her obesity, range of motion limitations, or allegations of pain, nor did they account for the breaks she would need during a workday. Pl.'s Br. at 12–13, Dkt. 18.

17

The record does not support Hope's assertions. In order for a vocational expert's opinion to be relevant, it must be rendered in response to a proper hypothetical question setting forth all of the claimant's impairments. Walker v. Bowen, 889 F.2d 47, 50–51 (4th Cir. 1989). "While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record." Russell v. Barnhart, 58 F. App'x 25, 30 (4th Cir. 2003). Here, the ALJ specifically posed the hypothetical of a person of Hope's age, education, and work background who was limited to: lifting and carrying, including upward pulling, twenty pounds occasionally and ten pounds frequently; standing, walking, and sitting with normal breaks for no more than six hours in an eight-hour day; occasionally climbing ramps, stairs, ladders, ropes, and scaffolds; occasionally stooping, kneeling, crouching, and crawling; and frequently balancing. R. 70. This individual could only occasionally reach overhead bilaterally. Id. The vocational expert stated that a hypothetical individual with those restrictions would be able to be in retail sales, or be an usher or lobby attendant. R. 70–71. The ALJ then added additional qualifications, namely that the individual should: never climb ladders, ropes, or scaffolds; never crawl; and never be exposed to hazards, such as dangerous machinery and unprotected heights. R. 71. The vocational expert stated his answers would not change with those additional qualifications. Id.

The ALJ finally asked the vocational expert about this same hypothetical claimant with additional limitations, including: occasionally lifting or carrying, including upward pulling, up to ten pounds; and standing or walking with normal breaks for two hours in an eight-hour day. R. 71–72. The vocational expert testified that the hypothetical individual could perform work at the sedentary level, and jobs included order clerks and material handlers/packers/sealers. R. 72.

The ALJ included all of Hope's limitations in his second hypothetical, and the vocational

expert responded that there were jobs in significant numbers in the national economy that an individual with those limitations could perform. Because the ALJ's hypothetical included all of Hope's limitations, the vocational expert's testimony was relevant to the ALJ's determination. Notably, the ALJ included sedentary jobs that Hope could perform in his opinion, even though he ultimately did not determine that she was limited to sedentary work. R. 22.

Additionally, there is nothing in the record to support Hope's assertion that she would need more breaks than are normally required to complete an eight-hour workday. No treating physician or physician offering medical opinion evidence determined that Hope would need additional breaks. Accordingly, because the record does not support that alleged impairment, the ALJ did not err in not including it in his hypotheticals to the vocational expert.

Overall, substantial evidence supports the ALJ's RFC determination. In making that determination, the ALJ considered Hope's obesity, upper extremity mobility limitations, and subjective complaints of pain. As a result, the ALJ's hypotheticals to the vocational expert, in accounting for all of Hope's RFC limitations, also accounted for those issues. The ALJ thus appropriately relied on the vocational expert's testimony in finding that Hope is not disabled.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the final decision of the Commissioner, **DENYING** Hope's motion for summary judgment, **GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case from the Court's docket.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive on the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: January 31, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge